UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GALE L-S, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 21 C 6874 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gale L-S. seeks review of the final decision of the Acting Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). Gale requests reversal of the ALJ's decision and remand [24], and the Acting Commissioner moves for summary judgment affirming the decision [31]. For the following reasons, the Court affirms the ALJ's decision.

**BACKGROUND**

Born on July 23, 1958, Gale was 56 years old when she applied for DIB on June 19, 2015. Gale alleges disability as of April 18, 2014 due to chronic right wrist pain/limitations, bone taken out of right arm-fused with metal plate/screws, asthma, and hypertension. Gale obtained a college education and last worked as an accounting technician for the State of Illinois, processing payments for expungements and background checks. Gale was employed through August 2015.[1]

Gale's claims were initially denied on August 12, 2015 and upon reconsideration on January 8, 2016. (R. 154, 169). On July 6, 2017, the administrative law judge ("ALJ") held an in-person hearing, which Gale and her attorney attended, and vocational expert ("VE") Matthew Sprong testified. *Id*. at 76-127. Following the hearing, on January 29, 2018, the ALJ issued a

---
[1] Gale testified that she was on medical leave from April 2014 to May 2016. (R. 52)

partially favorable decision finding Gale disabled beginning on May 10, 2016. *Id*. at 170-84. On January 31, 2019, the Appeals Council affirmed the finding of disability as of May 10, 2016, but remanded the earlier period. *Id*. at 192-96. The ALJ held a second in-person hearing on June 16, 2019, which Gale and her attorney attended, and VE Julie Bose testified. *Id*. at 45-75. On August 7, 2019, the ALJ found Gale not disabled from April 18, 2014 to May 9, 2016. *Id*. at 26-37.

The opinion followed the required five-step evaluation process, 20 C.F.R. § 404.1520, and considered the period from April 18, 2014 to May 9, 2016 (the "relevant period"). The ALJ concluded that Gale had one severe impairment—a fracture of the upper extremity. (R. 28). The ALJ concluded that Gale did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 29. The ALJ then determined that Gale had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:

> claimant had to avoid walking or working on uneven terrain or ground. The claimant could operate hand controls with her right hand occasionally, handle items frequently with her right hand and finger with her right hand frequently. The claimant could occasionally climb ladders, ropes or scaffolds. The claimant had to avoid concentrated exposure to humidity, dust, odors, fumes and other pulmonary irritants. The claimant had to avoid concentrated exposure to extreme cold and vibration and she may have needed to occasionally rest her hands and therefore, would have been off task for up to fifteen percent of the workday.

*Id*. at 30. The ALJ concluded that Gale was able to perform her past relevant work as an accounting clerk during the relevant period. *Id*. at 36-37. As a result, the ALJ found Gale not disabled. *Id*. at 37. The Appeals Council denied Gale's request for review on April 15, 2020. *Id*. at 14-19.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Gale raises one argument in support of her request for reversal and remand. Doc. 24 at 7-8. She contends that the ALJ erred in rejecting the opinion of orthopedic surgeon Michael

3

Weisburger, and in assessing his off-task behavior limitation. For the reasons discussed below, the Court finds the ALJ's decision is supported by substantial evidence. *Biestek*, 139 S. Ct. at 1154.

With respect to applications filed before March 27, 2017, as long as a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence" in the case record, the ALJ should give it controlling weight. SSR. 96–2p; *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019). However, an "ALJ need not blindly accept a treating physician's opinion." *Schreiber v. Colvin*, 519 F. App'x 951, 958 (7th Cir. 2013). An ALJ "may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (cleaned up). While the ALJ should consider the regulatory factors that go into the weighing of medical opinions—(1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency with the record as a whole; (5) specialization—the ALJ does not have to recite them chapter and verse. 20 C.F.R. § 404.1527(c)(2)-(5); *Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021) ("we will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor"). The ALJ need only minimally articulate her reasons for rejecting a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

On August 7 and 11, 2015, Dr. Weisburger opined that based on Gale's pain, it was unlikely she could return to her previous activities, would require a ten-minute break every twenty minutes with the use of her right hand, and could not lift more than ten pounds with her right hand.

4

(R. 927-32).[2] The ALJ assigned less than controlling weight to Dr. Weisburger's opinions because they were inconsistent with evidence in the case record and relied on subjective pain complaints.

### 1. Inconsistent Evidence

First, the ALJ reasonably concluded that Dr. Weisburger's opinions were inconsistent with records that demonstrated Gale's right hand improved after surgery and that she had fewer strength deficits in her right hand. An ALJ is entitled to reject a medical opinion where it is conclusory, unsupported, or contradicted by treatment records. *Pate v. Kijakazi*, 2021 WL 3627118, at *3 (7th Cir. 2021); *see also Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) ("ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes."); *Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019) ("An ALJ may discount a doctor's opinion for reasons that are supported by the record."). In evaluating the record, an ALJ may rely on a claimant's improvement with treatment as long as the ALJ does not equate the improvement with a claimant's ability to enter the workforce. *See, e.g.*, *Reetz on behalf of Reetz v. Kijakazi*, 2023 WL 183859, at *4 (E.D. Wis. Jan. 13, 2023) (affirming where "ALJ completed a detailed analysis of the objective medical evidence[, including] . . . history of improvement."); *Kewenig v. Kijakazi*, 2022 WL 4586085, at *3 (E.D. Wis. Sept. 29, 2022) ("Improvement with treatment was, therefore, a legitimate consideration").

In the present case, the ALJ explained that Gale's treatment records showed gradual improvement before Dr. Weisburger issued his opinion in August 2015. (R. 34). As Gale identified, throughout 2015 Dr. Weisburger noted that she was "at least 20% better" after receiving injections, "probably about 20% better but she is having severe pain along the ulnar aspect of her

---

[2] The ALJ also evaluated Dr. Weisburger's letters from the relevant period. (R. 33) (*citing* 615-17, 659-60, 677-78). Gale has waived any argument concerning the letters because she did not raise and develop it in her briefs. *See Martin v. Kijakazi*, 2022 WL 1681656, at *3 (7th Cir. 2022) ("[Claimant] waived this argument by failing to raise it in his opening brief.").

wrist," and Gale noted that "she is doing okay. She is maybe a little improved" even with pain with heavier activities. Doc. 24 at 9-10 (*citing* R. 619-20, 927). Gale concedes that "it is true that Smith experience[d] some improvement after she underwent surgery in January 2015." *Id*. at 9. Additionally, the ALJ relied on Dr. Weisburger's treatment note from June 23, 2015 that stated, "[Gale] notes she is continuing to make improvement, slow but steady." (R. 618). Likewise, on August 4, 2015, a physical therapy record included improvement in Gale's grip strength and slight improvement in her perceived level of activities of daily living function. *Id.* at 930. Ultimately, the ALJ relied on Gale's evidence of improvement as only one consideration in his analysis of Dr. Weisburger's opinions. The ALJ did not "pluck" the word improvement out of context, improperly equate records of improvement with Gale's ability to work, or assert that Gale's improvement was sufficient to indicate that she was not disabled. Instead, the ALJ grappled with contrary evidence and relied on Gale's improvement as evidence of inconsistency, which is a proper use of such evidence. *See Kewenig*, 2022 WL 4586085, at *3. Thus, the ALJ minimally articulated his rationale for discounting Dr. Weisburger's opinions.

Moreover, the ALJ analyzed supporting and conflicting evidence concerning Gale's strength deficits to conclude that Dr. Weisburger's opinions were inconsistent with the record. Specifically, the ALJ identified an August 2015 record where Gale's ability to lift with her right hand was significantly limited. (R. 34). There, Dr. Weisburger concluded that Gale could do "no activities greater than 10 pounds with the right hand." *Id*. at 927. In contrast, the ALJ pointed to a December 2015 consultative examination with Dr. Elmes, where he reviewed Gale's records and completed an in-person interview. *Id*. at 34 (*citing* R. 969). According to the ALJ, the record showed only slightly decreased strength in Gale's right arm and stated, "[g]rip strength on the right is 23, 17, 16, 19, 13; maximum being 23 pounds. Grip strength on the left is 72, 70, 50, 50, 48;

6

maximum being 72 pounds. . . . Upper extremity strength 4/5 on the right and 5/5 on the left." *Id*. at 968-69. Dr. Elmes concluded that Gale could complete activities with her right hand at a heavier weight than Dr. Weisburger opined. *Id*. For additional support, the ALJ identified imaging of Gale's right wrist from January 2016. *Id*. at 34 (*citing* R. 990). Rather than interpret the x-ray results himself, the ALJ relied on Dr. Shah's progress notes: "no significant radiolunate arthrosis and a radiolunate angle of approximately zero, with no other significant bony abnormalities noted." *Id*. Gale relies on the fact that Dr. Shah's progress note also mentioned that Gale may continue to have pain, but the record also stated that Dr. Shah did not recommend any further type of operative intervention and she should manage her pain with anti-inflammatories. *Id*. at 990; *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence.") (cleaned up). Given the inconsistencies in the record, the ALJ was permitted to evaluate the records and conclude that Gale's evidence of strength during her examination with Dr. Elmes was inconsistent with Dr. Weisburger's opinion. As such, the ALJ adequately explained his conclusion that Dr. Weisburger's opinion was inconsistent.

### 2. Reliance on Subjective Complaints

Second, the ALJ also discounted Dr. Weisburger opinions because he relied on Gale's subjective complaints, not objective findings. An ALJ may discount a treating physician's opinions based on the claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) (a claimant's assertions of pain, taken alone, are not conclusive of disability); *see also Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (ALJ properly discounted opinions based largely on subjective reporting); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) ("An ALJ can give less than controlling weight to medical opinions based on subjective reports"); *Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016) (affirming where medical opinion was discounted in part because of it

7

relied on subjective reports).[3]  Here, the ALJ relied on Gale's August 2015 examination with Dr. Weisburger to conclude that it "showed only pain, a subjective finding with no objective deficits." (R. 34).  Dr. Weisburger's notes from an August 7, 2015 examination include objective evidence of her incision appearing clear, dry, intact, and well-healed and subjective evidence of the pain Gale was suffering near her wrist. *Id*. at 927.  The ALJ referenced this record as one reason for discounting Dr. Weisburger's opinions because it relied on Gale's subjective reporting of her assertions of pain.  Because an ALJ may evaluate whether a doctor's opinion is based on subjective complaints, the ALJ minimally articulated his reasons for discounting Dr. Weisburger's opinions.

### 3. ALJ Complied with Pre-2017 Regulatory Factors

Because the ALJ determined that Dr. Weisburger's opinion does not have controlling weight, the Court must determine whether the ALJ adequately considered the checklist factors. 20 CFR 404.1527(c).  In doing so, the Court applies a common-sense reading to the entirety of an ALJ's decision. *Rice*, 384 F.3d at 369; *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).  Here, the ALJ's decision conveys how closely he considered Dr. Weisburger's opinions within the context of his treatment relationship and the consistency and supportability factors.  In summarizing the evidence to support the RFC, the ALJ referred to Gale's initial referral to Dr. Weisburger in June 2014 and her various treatment records, which demonstrate the tests and evaluations that Dr. Weisburger performed during the relevant period. (R. 31-32).  This is evidence

---

[3] The cases Gale relies on are distinguishable.  In *Carradine v. Barnhart*, 360 F.3d 751, 754-55 (7th Cir. 2004) and *Yousif v. Chater*, 901 F. Supp. 1377, 1385 (N.D. Ill. 1995), the courts reversed the ALJ's decisions because the ALJ's credibility determinations of claimant's pain were based on errors.  In *Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006), the Seventh Circuit affirmed the ALJ's determination that claimant's testimony regarding her pain was exaggerated.  Here, the ALJ did not claim that Gale exaggerated her pain nor was the ALJ's reason for discounting Dr. Weisburger's opinions based on finding Gale not credible.  Indeed, Gale does not argue that the ALJ erred in his analysis of her subjective symptoms or his credibility determination.  Instead, the ALJ focused on a lack of objective evidence in Dr. Weisburger's opinions as one of the reasons for rejecting his opinions.

of the length, nature, and extent of Gale's treatment relationship with Dr. Weisburger. 20 C.F.R. § 404.1527(c)(2). In analyzing Dr. Weisburger's opinions, the ALJ explained that he is a specialist who treated Gale prior to May 10, 2016. (R. 34); 20 C.F.R. § 404.1527(c)(5). The ALJ then identified specific records, including progress notes and imaging, to conclude that Dr. Weisburger's opinions were not consistent with or supported by the medical record. (R. 34); 20 C.F.R. § 404.1527(c)(3)-(4). Thus, this is far from a case where the ALJ disregarded a treating physician's opinion without explanation or without examining any of the checklist factors. Instead, the ALJ's minimal articulation of his reasoning is sufficient.

### 4. State Agency Opinions

An ALJ may give more weight to the state agency medical consultants than a treating physician as long as the ALJ explains his rationale. *See, e.g.*, *Givens v. Colvin*, 551 F. App'x 855, 860 (7th Cir. 2013) (affirming where ALJ gave more weight to agency reviewer than treating physician); *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("The ALJ did indeed give great weight to both medical assessments, a determination we affirm if supported by substantial evidence."); *Leffler v. Comm'r of Soc. Sec.*, 2016 WL 4074118, at *8 (C.D. Ill. July 29, 2016) (same). Here, the ALJ explained that he assigned the agency reviewers' opinions great weight because their opinions were consistent with the medical evidence for the relevant period and accounted for Gale's subjective complaints. (R. 33).

Gale relies on *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) where the Seventh Circuit explained that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." Doc. 24 at 13. But, the ALJ did not reject Dr. Weisburger's opinions because he accepted the agency reviewers' contradictory opinions. Instead, the ALJ

9

provided independent reasons, such as inconsistencies with the record and treatment notes and reliance on subjective complaints to reject Dr. Weisburger's opinions.[4] The ALJ considered supporting and contrary records during the relevant period that demonstrate that Gale had a reduced range of motion, but four out of five strength in her right wrist. (R. 34). The ALJ also analyzed records where Gale had no sensory abnormalities, no swelling, and no strength deficits in her right arm other than those present in her hand and wrist. *Id*. Further, the ALJ pointed out that while Gale reported chronic pain in her right wrist, her exam showed no gross neurological deficits. *Id*. Therefore, throughout the ALJ's opinion, he adequately explained why he gave more weight to the agency reviewers than the treating physician and did not uncritically accept the agency reviewers' conclusions.

Additionally, Gale takes issue with two parts of the agency reviewers' opinions. First, when asked to explain manipulative limitations, the initial reviewer opined that Gale was showing slow improvement, but she would be able to frequently handle and perform fine movements with her right upper extremity by January 2016. (R. 147-48). Gale asserts that the ALJ erred by relying on the agency reviewers because the projected improvement did not occur. Doc. 24 at 13-14. However, Gale does not mention that the agency reviewer on reconsideration did not include a similar finding. (R. 165). Instead, when asked to explain manipulative limitations, the agency reviewer opined that Gale was showing slow improvement and limited her to frequent use of her right upper extremity (with no explicit mention of future improvement). *Id*. Ultimately, the RFC the ALJ drafted included the RFC limitation the agency reviewer on reconsideration provided. Thus, the ALJ accepted and properly relied on the opinion of the state agency reviewer on

---

[4] Gale argues that the state agency reviewers erred by not considering Dr. Weisburger's 2015 opinions. Doc. 24 at 14. However, the agency reviewer on reconsideration did consider it. (R. 162, 166) ("MSS given by TS Dr. Weisburger on 8/10/15 states that CL requires 10 minute breaks every 20 minutes in regards to use of tight [*sic*] hand and a lifting restriction of 10 pound with the right hand.").

reconsideration. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) ("ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence") (*quoting Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

Second, according to Gale, the agency reviewer's opinion on reconsideration was illogical because he opined that Gale should be limited to occasional fingering but then stated Gale could use her right arm frequently. Doc. 24 at 14-15. However, Gale takes the two notes out of context. *Compare* (R. 162), *with* (R. 165). The agency reviewer's first note about occasional fingering is located in the reconsideration analysis "findings of fact and analysis of evidence" section under the "Ortho CE" summary. *Id*. at 161-62. As a result, the first mention of occasional fingering is part of a summary from a different doctor's examination. Whereas the conclusion that Gale could use her right arm frequently is located in the agency reviewer's physical RFC assessment. *Id*. at 165. Therefore, there is no inconsistency or illogic in the reviewer's opinion because only one of the notes Gale highlighted is part of the agency reviewer's opinion. Gale's argument boil down to a disagreement about how the evidence should have been weighed, and that is no reason to overturn the ALJ's decision. *Burmester*, 920 F.3d at 510. As such, the Court finds that the ALJ's assessment of the agency reviewers' medical opinions is supported by substantial evidence.

### 5. Quantity of Breaks RFC Restriction

Finally, Gale argues that the ALJ failed to explain how he determined that Gale may need to occasionally rest her hands and, therefore, would be off task for up to fifteen percent of the workday. The Seventh Circuit has explained that an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence." *Burmester*, 920 F.3d at 510; *see also Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir.

2010) (affirming where "the ALJ limited [claimant] to a more restrictive residual functional capacity finding than any physician on the record."); *McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 881 (N.D. Ill. 2018) (finding "no evidentiary deficit" where the ALJ partially relies on agency consultants' opinions but incorporates additional limitations).

In this case, the record supported the ALJ's conclusion that Gale required a rest and off-task accommodation. Dr. Weisburger opined that Gale would need a ten-minute break every twenty minutes with use of her right hand. (R. 927, 931-32). Dr. Shah, Gale's primary care physician, opined that Gale would require four additional breaks for fifteen minutes. *Id*. at 962. The ALJ at the most recent hearing also asked the VE about off task restrictions, and the VE testified that a hypothetical individual with Gale's position could be off task for up to fifteen percent of the workday. *Id.* at 73.[5] However, the agency reviewers did not include an off-task or break restriction in their opinions, (R. 164), and because the ALJ assigned Dr. Weisburger and Dr. Shah's opinions little weight,[6] (R. 34-35), the ALJ was not required to incorporate their accommodations. *See Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (explaining ALJ was not required to include limitations in hypotheticals because the ALJ was justified in discounting the doctor's conclusions); *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) ("The ALJ needed only to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible."). Ultimately, Gale bore the burden of establishing that she required breaks and an off-task accommodation, *Winkelman v. Saul*, 835 F. App'x 889, 892 (7th

---

[5] The VE at the first hearing testified that the off-task allowance for Gale's past relevant work positions was ten percent to meet ninety percent productivity. However, the ALJ was not required to mention the prior testimony because it was "rendered irrelevant by the RFC the ALJ adopt[ed]." *Guranovich v. Astrue*, 2011 WL 686358, at *24 (N.D. Ill. Feb. 15, 2011), *aff'd*, 465 F. App'x 541 (7th Cir. 2012); *see also Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) ("The ALJ is not required to mention every piece of evidence").

[6] Gale has waived any argument concerning the weight the ALJ assigned to Dr. Shah's medical opinion because she did not raise and develop it in her briefs. *See Martin*, 2022 WL 1681656, at *3.

12

Cir. 2021), but even though she failed to meet this burden, the ALJ included a more restrictive accommodation than the agency reviewers proposed. Based on this record, the ALJ's RFC was evidence that the ALJ credited some of Gale's allegations and fully considered the evidence. Thus, the ALJ supported the RFC with more than a mere scintilla of evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [24], the Acting Commissioner's Motion for Summary Judgment [31] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: March 31, 2023

Sunil R. Harjani
United States Magistrate Judge